UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DAVID TRINIDAD,                                             :

               Petitioner,                                :      04 Civ. 9685 (SHS) (GWG)

     -v.-                                                    :      REPORT AND
                                                                                             RECOMMENDATION
PAUL ANNETTS, Superintendent,                               :
Downstate Correctional Facility,
                                                            :
               Respondent.
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

     David Trinidad brings this petition for writ of habeas corpus pro se challenging his

conviction in the Supreme Court of the State of New York, New York County, for two counts of

Robbery in the Second Degree (New York Penal Law § 160.10(1)). As a persistent violent

felony offender, Trinidad was sentenced to two concurrent terms of imprisonment of 16 years to

life. He is currently incarcerated at Downstate Correctional Facility in Fishkill, New York. For

the reasons stated below, Trinidad's petition should be denied.

I. BACKGROUND

    A. Evidence Adduced at Trial

           1. The People's Case

     On October 15, 2000, at approximately 5:00 p.m., Sheung Lee and his wife, Kit Fong

Lee, walked into their building after returning from church. (K. Lee: Tr. 213-14; S. Lee: Tr. 275-

77).[1] At the time, Mr. Lee was wearing a gold necklace with a gold pendant, and was carrying a

Dupont pen. (K. Lee: Tr. 214-215; S. Lee: Tr. 276). Mrs. Lee was wearing a jade pendant

---

[1] "Tr." refers to the trial transcript and "S." refers to the sentencing transcript, both of which are filed as Docket #7.

encased in gold. (See K. Lee: Tr. 215). Two men stood in front of the building: the Lees' next-door neighbor, Sixto Goris, and a man whom Mr. Lee had seen once or twice before in a local park and who was later identified by Mr. Lee as Trinidad. (See S. Lee: Tr. 277-278). As Mr. and Mrs. Lee passed the two men outside the building, the men looked at the Lees. (S. Lee: Tr. 278).

The Lees entered the building's lobby using a key and proceeded to the elevator, where a woman held the doors open for them. (S. Lee: Tr. 280; K. Lee: Tr. 215-216). The Lees entered the elevator and, just before the door closed, the two men outside the building rushed inside the elevator. (S. Lee: Tr. 280). Mr. Lee identified these two men at trial as Goris and Trinidad. (See S. Lee: Tr. 280). Mr. Lee pressed the button for the 15th floor, where he and his wife lived next to Goris. (S. Lee: Tr. 280-281). When the elevator reached the 8th floor, the woman exited, and then Mr. Lee's neighbor, Goris, pressed the button for the 12th floor. (See S. Lee: Tr. 281; K. Lee: Tr. 220). When the elevator stopped at the 12th floor, Goris got out and Trinidad pushed Mr. Lee out of the elevator. (S. Lee: Tr. 281-282; K. Lee: Tr. 220-223, 231-32). Trinidad blocked the door with his foot to prevent Mrs. Lee from getting out. (S. Lee: Tr. 282; K. Lee: Tr. 220-223, 231-32). Goris then pushed Mr. Lee against the wall between the two elevators and grabbed him. (S. Lee: Tr. 282). While holding Mr. Lee up against the wall, Goris pulled off Mr. Lee's chain and took his pen while Trinidad went through Mr. Lee's pockets and took his wallet. (S. Lee: Tr. 282-283; K. Lee: Tr. 222, 232, 236-237). Trinidad then grabbed Mrs. Lee's pocketbook and pulled her necklace off her neck, scratching and cutting her neck. (S. Lee: Tr. 283; K. Lee: Tr. 222). Then Mrs. Lee pressed the alarm in the elevator and the two men fled. (K. Lee: Tr. 222, 225-26; S. Lee: Tr. 284).

Officer Carl Dixon responded to a 911 call from the Lees, and Officer Kit Koon arrived

2

within 5 to 10 minutes of Officer Dixon to translate Chinese. (See Dixon: Tr. 252-253; Koon: Tr. 266). Officer Dixon testified that the Lees told the officers that they were robbed by two Hispanic males: one 5' 10", 200 pounds and 50 years old, and the other 5' 6" and 180 pounds. (Dixon: Tr. 253). Dixon's memobook, however, indicated that the Lees told Dixon that the perpetrators were 5' 11" and 5' 9". (Dixon: Tr. 257-58). The complaint report indicated that the second robber's height was 5' 6"; but that figure had originally been recorded as another number, which was indiscernible, and changed to 5' 6". (Dixon: Tr. 261-262). Mr. Lee testified that Goris was three inches taller than the second perpetrator, whom he later identified as Trinidad (S. Lee: Tr. 298), and that Trinidad was two or three inches taller than Mr. Lee himself. (S. Lee: Tr. 299). Mr. Lee testified that he was 5' 4". (S. Lee: Tr. 298). According to Detective Robert Suschinsky, Trinidad was 5' 5", 170 lbs, and Goris was 5' 8", 145 lbs at the time of the robbery. (Suschinsky: Tr. 326, 328).

On October 18, 2000, Mr. Lee viewed a lineup arranged by Detective Suschinsky at the Fifth Precinct station house. (S. Lee: Tr. 297; Suschinsky: Tr. 321). After viewing the lineup, which consisted of five men, Mr. Lee selected Trinidad. (S. Lee: Tr. 297; Suschinsky: Tr. 330). Mr. Lee recalled that six men participated in the line-up, and he testified that he was 100 percent positive about his identification of Trinidad. (S. Lee: Tr. 309-311). Suschinsky admitted that the fillers had characteristics different from Trinidad's. For example, filler number three was 6' 1" tall, filler number two was 5' 11" tall and 185 pounds, and fillers one and two had hair much shorter Trinidad's. (Suschinsky: Tr. 331-333). To even out the height, Suschinsky arranged for the fillers to be seated in the lineup. (Suschinsky: Tr. 338).

3

2. Trinidad's Case

On February 22, 2001, James Brown, an investigator with the Legal Aid Society, went to the Lees' apartment to interview Mr. Lee about the robbery. (Brown: Tr. 341-42). During the interview, Mr. Lee told Brown that on October 18, 2000, he had identified Trinidad from a police line-up as the perpetrator of the robbery. (Brown: Tr. 343). Brown then asked Mr. Lee whether he was positive about his identification and, according to Brown, Mr. Lee stated that he was "90 percent sure." (Brown: Tr. 343, 348-49). Mr. Lee testified that he never told an investigator that he was 90 percent sure about the identification. (S. Lee: Tr. 312). Using a measuring tape, Brown determined that Mr. Lee was 5' 3-1/2" tall in shoes and 5' 2" tall without them. (Brown: Tr. 344).

B. Post-trial Motions, Jury Charge, Verdict, and Sentencing

Following summations, Trinidad's trial counsel moved for a mistrial, or in the alternative, a curative instruction on the basis of three comments made by the prosecutor during his summation: (1) that Trinidad "chose to plead not guilty and he's still trying to avoid responsibility" (Tr. 369), (2) that information from the Goris family led the police to Trinidad (Tr. 370), and (3) that even if Mr. Lee were only 90 percent confident of his eyewitness identification, that would be enough to convict Trinidad (Tr. 383-384). The trial court denied the motion for a mistrial and refused to give the jury a curative instruction addressing the prosecutor's remarks. (Tr. 395). However, the court did instruct the jury generally that they were "not bound to accept the argument of either counsel," and that if any argument was not based on the evidence, the jury was "free to disregard it entirely." (Tr. 398-399). The court emphasized to the jury numerous times that the burden of proof fell on the prosecution to show

4

that the defendant was the person who committed the crime beyond a reasonable doubt. (Tr. 403, 405-408). Additionally, the jury was told that "[t]he defendant is presumed to be innocent and this presumption rests with him throughout the trial." (Tr. 406).

The jury returned a verdict of guilty on both robbery counts. (Tr. 423). On December 3, 2001, the court sentenced Trinidad to two concurrent terms of imprisonment of 16 years to life. (S. 11).

C. Direct Appeal

In June 2003, Trinidad, through his counsel, appealed to the Appellate Division, First Department. See Brief for Defendant-Appellant, dated June 18, 2003 (reproduced as Ex. A to the Declaration in Opposition to Petition For a Writ of Habeas Corpus, filed May 18, 2005 (Docket #6) ("Opp. Decl.")) ("Pet. App. Brief"). Trinidad claimed in the Appellate Division that "the prosecutor denied [Trinidad] his due process right to a fair trial by misconduct during summation," id. at 13 – referring to the same three remarks raised by counsel in the motion for a mistrial.

On March 16, 2004, the Appellate Division unanimously affirmed Trinidad's conviction. People v. Trinidad, 5 A.D.3d 231, 231 (1st Dep't 2004). The court held that "the People's summation, read as a whole, was generally responsive to [Trinidad's] arguments and did not deprive [Trinidad] of a fair trial. While some of the challenged comments would have been better left unsaid, there was no misconduct that was so egregious as to require reversal." Id. (internal citation omitted).

By letter of application dated March 31, 2004, Trinidad sought leave to appeal to the Court of Appeals based on all the issues raised in his Appellate Division brief. See Letter from

Michael C. Taglieri to the Hon. Judith Kaye, dated March 31, 2004 (reproduced as Ex. D to Opp. Decl.), at 1 n.1. On May 26, 2004, the New York Court of Appeals denied the application. People v. Trinidad, 2 N.Y. 3d 808 (2004).

      D.  Trinidad's Habeas Petition

Trinidad timely submitted this petition for writ of habeas corpus. See Petition Under 28 USC § 2254 For Writ of Habeas Corpus By a Person in State Custody, filed December 9, 2004 (Docket #1) ("Petition"). In his opposition, the respondent argues initially that Trinidad fails to state in his petition the claims he intends this Court to address. See Respondent's Memorandum of Law in Opposition to Petition For a Writ of Habeas Corpus, filed May 18, 2005 (Docket #5) ("Resp. Mem."), at 5. In fact, the petition contains a ground for relief that corresponds to the claim set forth in Trinidad's brief to the Appellate Division. See Petition ¶ 13; Pet. App. Brief at 2.[2] In any event, respondent has addressed this claim on the merits. Trinidad has not filed any papers in reply.

II.  APPLICABLE LEGAL PRINCIPLES

      A.  Law Governing Petitions for Habeas Corpus Under 28 U.S.C. § 2254

A petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in the state courts unless the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted

---

[2] The copy of the petition reproduced as Ex. G to the Declaration in Opposition is missing the page where Trinidad set forth his grounds for relief, but the page is present in the original petition.

6

in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

For a claim to be adjudicated "on the merits" within the meaning of 28 U.S.C. § 2254(d), it must "finally resolv[e] the parties' claims . . . with res judicata effect," and it must be "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (internal quotation marks and citations omitted). As long as "there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds," a state court decision will be considered to be "adjudicated on the merits" even if it fails to mention the federal claim and no relevant federal case law is cited. See Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001) (internal quotation marks omitted); accord Rosa v. McCray, 396 F.3d 210, 220 (2d Cir. 2005) ("This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether the court has alluded to federal law in its decision.")

In Williams v. Taylor, the Supreme Court held that a state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. 529 U.S. 362, 405-06 (2000). Williams also held that habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court

7

decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the state court's application must have been "objectively unreasonable." Id. at 409.

In addition, under 28 U.S.C. § 2254(a), federal habeas review is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Errors of state law are not subject to federal habeas review. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). To be entitled to habeas relief, a petitioner must demonstrate that the conviction resulted from a state court decision that violated federal law. See, e.g., id. at 68.

III. DISCUSSION

A. Applicable Law on Habeas Corpus Review of Prosecutorial Misconduct Claims

When a federal habeas court reviews comments made by the prosecutor during trial, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). The scope of review for allegations of prosecutorial misconduct in the habeas context is "quite limited." Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998). Relief is available only where the court "find[s] that the prosecutor's comments constituted more than mere trial error, and were instead so egregious as to violate the defendant's due process rights." Id. (citing Donnelly, 416 U.S. at 647-48); see also Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.") (internal quotation marks and citations omitted).

8

The relevant inquiry in a habeas corpus petition for review of a prosecutor's summation is whether the defendant was denied a fair trial. Thus, it is not relevant whether the prosecution's comments were "undesirable" or even "universally condemned." Darden, 477 U.S. at 181 (citation omitted). Moreover, the effect of the prosecutor's misconduct on the trial, not the prosecutor's state of mind, is central to the due process inquiry. See generally Smith v. Phillips, 455 U.S. 209, 220 (1982). Finally, in evaluating whether comments during summation deprived the defendant of a fair trial, it is important to place the "remarks in context." See Darden, 477 U.S. at 179; accord Greer v. Miller, 483 U.S. 756, 766 (1987); United States v. Young, 470 U.S. 1, 11-12 (1985); Blissett v. Lefevre, 924 F.2d 434, 440 (2d Cir.), cert. denied, 502 U.S. 852 (1991).

Even where a petitioner has shown prosecutorial misconduct with respect to comments made during summation, he must still show "that he suffered actual prejudice because the . . . comments . . . had a substantial and injurious effect or influence in determining the jury's verdict." Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994), cert. denied, 516 U.S. 1152 (1996); accord Tankleff, 135 F.3d at 252; Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991). In the Second Circuit, three factors are considered when determining whether actual and substantial prejudice occurred: (1) the severity of the misconduct, (2) the nature of curative measures taken to remedy the prejudice, if any, and (3) the certainty of the conviction absent the improper conduct. See Bentley, 41 F.3d at 824; Floyd, 907 F.2d at 355; Gonzalez, 934 F.2d at 424.

B. The Prosecutor's Statements

We now review each statement with these principles in mind.

1. <u>Statement that Trinidad was Avoiding Responsibility by Pleading Not Guilty</u>

The prosecutor began his summation by telling the jury, over an objection by Trinidad's trial counsel, that Trinidad "chose to plead not guilty and he's still trying to avoid responsibility. . . . He's counting on you, [the jury], to let the Lees become the perfect victims." (Tr. 369). The trial court overruled the objection and allowed the prosecution to repeat the statement. <u>Id.</u> Trinidad claims this statement violated his due process rights, and denied him a fair trial by denigrating him "for choosing to go to trial and require the state to prove his guilt." Pet. App. Brief. at 14. Respondent argues that the "court's repeated admonitions regarding [Trinidad's] presumption of innocence" were sufficient to cure the prosecutor's statement. <u>See</u> Resp. Mem. at 10.

While the reference to Trinidad's decision to not plead guilty was improper, it was tempered by the general instructions to the jury that Trinidad was presumed innocent and that the prosecution bore the burden of proof. (Tr. 403, 405-06). General jury instructions may cure prosecutorial misconduct, even if the instructions do not specifically address the erroneous remarks. <u>See</u> <u>generally</u> <u>Garofolo v. Coomb</u>, 804 F.2d 201, 206 & n.3 (2d Cir. 1986) (jury instructions relating generally to attorney summations cured specifically improper prosecutorial remarks); <u>Lebron v. Girdich</u>, 2003 WL 22888809, at *3 (S.D.N.Y. Dec. 5, 2003) (prosecutor's statement relating to burden of proof and petitioner's decision not to take the stand were cured by the court's general jury instructions before deliberations). Furthermore, the "severity of the prosecutor's misconduct" may be "mitigated by the brevity and fleeting nature of the improper comments." <u>Tankleff</u>, 135 F.3d at 253. Here, the clear instructions regarding burden of proof and the presumption of innocence were sufficient to cure any possible taint caused by the

10

prosecutor's comments. Because reference to Trinidad's decision not to plead guilty did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process," Darden, 477 U.S. at 181, habeas relief is unavailable based on this comment.

### 2. False Statement Not in Evidence

Trinidad also protests the prosecutor's statement that, if Trinidad were the "wrong man . . . it would mean that the investigation the police conducted after their conversation with the Goris family mistakenly led to the defendant." (Tr. 370). Trinidad argues this statement violated his due process rights by falsely implying to the jury that the People "had additional evidence of [Trinidad's] guilt that had not been presented." See Pet. App. Brief at 16. The inference, Trinidad argues, is that the conversation with the Goris family provided evidence that Trinidad was the second robber, "even though no such evidence had been presented at trial or, in fact, existed." Id. at 18.

Respondent argues the "comment accurately summarized the trial testimony," and was not a mischaracterization of facts or a reference to facts not in evidence. Resp. Mem. at 10. Indeed, the record reflects that Officer Koon testified that he made a total of five or six investigative visits to the Goris home. (Koon: Tr. 269). After those visits, Officer Koon followed up on those conversations and pursued further investigations, which led to the lineup where Mr. Lee identified Trinidad. (See Koon: Tr. 267-68). The trial judge would not allow into evidence the fact that the investigations were "based on" conversations with the Goris family, or that the conversations led Officer Koon to Trinidad. (Tr. 267-268).

Even though the comment accurately summarized the trial testimony, it still improperly implied to the jury – in contravention of the trial judge's ruling – that it was the conversations

11

with the Goris family that led to Trinidad. Nonetheless, this comment was so brief and fleeting that it is doubtful that the jury would have contemplated its potential implication. In any event, the jury was carefully instructed on what materials should be considered evidence in the case (Tr. 396, 398), and that the verdict should be based on the evidence and not speculation (Tr. 397). When viewed in this context, the comment was not such that it "infected the trial with unfairness" or that any prejudice ensued. Darden, 477 U.S. at 181.

### 3. Prosecution's Remarks on "90 Percent" Confidence

Trinidad's third ground for reversal is based on the prosecutor's statement during summation that Mr. Lee's 90 percent confidence in his identification of Trinidad "was enough." (Tr. 383). Trinidad argues this statement, "in effect, charged the jury on what constitutes the threshold for confidence in an identification beyond a reasonable doubt." Pet. App. Brief at 19. Additionally, Trinidad argues the trial court ratified the prosecutor's statement by overruling defense counsel's objection and then refusing to cure the misconduct by specifically instructing the jury to disregard the errors. Pet. App. Brief at 21-22. "By ratifying the prosecutor's argument," Trinidad claims, "the court itself effectively adopted the prosecutor's percentage argument and suggested to the jury that it could convict based on that argument." Id. at 22. Respondent argues the statement was merely made in response to defense counsel's argument in summation. Resp. Mem. at 12.

As already discussed, Brown asserted that Mr. Lee stated to him that he was "90 percent sure" of his identification of Trinidad. (Brown: Tr. 343, 348-49). However, Mr. Lee denied ever so stating. (S. Lee: Tr. 312). In his summation, defense counsel argued that the jury should credit Brown's testimony and discredit Mr. Lee, and questioned why Mr. Lee's certainty would

12

rise from 90 percent to unequivocally identifying Trinidad at the time of trial. (Tr. 362, 367-68). In making this argument, defense counsel noted that "no one[']s going to instruct on what percentage is beyond a reasonable doubt." (Tr. 368).

The prosecutor in response essentially ignored defense counsel's nuanced argument and simply asserted that "90 percent is enough" (Tr. 383) for a conviction. While this remark would certainly be improper in isolation, the jury would have understood it in this case not as an attempted legal instruction regarding what constitutes the burden of proof, but as an argument by the prosecutor that even if the jury believed Brown's claim that Lee had asserted he was 90 percent sure of the identification, the jury could still convict Trinidad. Significantly, the court instructed the jury regarding what constituted proof "beyond a reasonable doubt" (Tr. 406-08), and that the arguments of counsel were merely arguments that the jury need not accept (Tr. 398).

Finally, there is no reason to conclude that the jury would attach any special significance to the fact that the trial judge overruled defense counsel's objection. The jury was specifically instructed that they were to disregard the fact that the judge "may have overruled . . . objections of counsel." (Tr. 397).

In sum, the comment regarding Mr. Lee's degree of certainty did not "infect[] the trial with unfairness." Darden, 477 U.S. at 181.

Conclusion

Because none of the three remarks by the prosecutor at Trinidad's trial violated his right to due process, either in isolation or taken together, Trinidad's petition should be denied.

# PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Sidney H. Stein, 500 Pearl Street, New York, New York 10007, and to the undersigned at 40 Centre Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Stein. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: October 26, 2005
      New York, New York

                                                          _____
                                                          GABRIEL W. GORENSTEIN
                                                          United States Magistrate Judge

Copies sent to:

David Trinidad
01-A-6674
Downstate Correctional Facility
Box F
Fishkill, New York 12524

Michelle Maerov
Assistant Attorney General
Attorney General's Office
120 Broadway
New York, New York 10271

Hon. Sidney H. Stein
United States District Judge

# PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Sidney H. Stein, 500 Pearl Street, New York, New York 10007, and to the undersigned at 40 Centre Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Stein. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: October 26, 2005
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

David Trinidad
01-A-6674
Downstate Correctional Facility
Box F
Fishkill, New York 12524

Michelle Maerov
Assistant Attorney General
Attorney General's Office
120 Broadway
New York, New York 10271

Hon. Sidney H. Stein
United States District Judge